**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Timothy K. Ueland,                                          Civil No. 08-5101  RHK/AJB

                Petitioner,

v.                                                          <u>**REPORT AND RECOMMENDATION**</u>

Joan Fabian, Commissioner,

                Respondent.


       This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  The action has

been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and

Local Rule 72.2(b).  This action was commenced on September 4, 2008, at which time petitioner

was confined at the Minnesota Correctional Facility at Faribault[1] as the result of a conviction and

sentencing in Hennepin County District Court.  Mr. Ueland was convicted by a jury on a single

count of terroristic threats for which he was sentenced to a term of one-year-and-one-day, to be

served consecutively to a 36-month sentence on a matter which is not a subject of this habeas

corpus action.

       The petitioner alleges that he received ineffective assistance of counsel as a result

of his trial attorney's opening statement "promise" to present certain evidence which ultimately

was not produced, and he further alleges prosecutorial misconduct at trial, based upon statements

---

[1]  Pursuant to the Offender Locator on the Minnesota Department of Corrections Internet
website, "www.doc.state.mn.us/" the petitioner was released from custody of the Minnesota
Department of Corrections on January 5, 2009, and is presently on supervised release.  Petitioner
has not advised the Clerk of Court as to any change of address.

attacking the defendant's character which were made by the prosecutor in rebuttal closing argument. Respondent opposes this § 2254 action, asserting that petitioner was not denied effective assistance of counsel, and he has not shown prejudice resulting from prosecutorial misconduct such that he was denied due process or fair trial. Respondent further contends that the petitioner is not entitled to an evidentiary hearing. For the reasons stated below it is recommended that the petition [Docket No. 1] be dismissed with prejudice.

**Background**

Petitioner Timothy Ueland commenced this action while he was incarcerated at the Minnesota Correctional Facility at Faribault, Minnesota. In October 2006, a Hennepin County jury found him guilty on a charge of terroristic threats for which he was given a prison sentence of a-year-and-a-day, to be served consecutively to another 36-month sentence. Petitioner was found not guilty on two additional charges of witness tampering. The charges arose out of Ueland's criminal involvement with Kathleen Schildgen.[2] Petitioner and Ms. Schildgen were arrested in October 2005, for attempting to use a stolen credit card. Ms. Schildgen subsequently made statements implicating the petitioner in the offense, and both were thereafter charged with credit-card fraud. A plea was negotiated with Schildgen pursuant to which she was to testify against Mr. Ueland in exchange for a reduced prison sentence. After entering a guilty plea on May 3, 2006, Schildgen was permitted to remain free pending sentencing. Following her plea hearing Ms. Schildgen went to Sully's Bar in northeast

---

[2] Facts relating to the underlying stolen credit card case are taken from State v. Ueland, 2008 WL 1795589 (Minn. Ct. App. 2008)(unpublished opinion), Respondent-State's Memorandum, Appendix 5. See Smith v. Kemna, (8th Cir. File No. 08-1901, February 2, 2009)(unpublished opinion)(facts taken from state appellate decision).

Minneapolis, where she encountered the petitioner as she was entering the bar.  At that time

Ueland made physical contact with Schildgen, and made statements to her, which she interpreted

to be threats relating to her anticipated testimony against the petitioner.  Schildgen immediately

left Sully's Bar and then tried unsuccessfully to contact her lawyer.  She left a message and her

call was returned by her attorney the following day, at which time she was advised to report the

incident to police.  The police obtained a statement from Ms. Schildgen which led to Ueland's

arrest on terroristic threats and first-degree aggravated witness tampering charges.  The

complaint was later amended to include an additional first-degree witness tampering charge.

  **Defense Counsel's Opening Statement.**  At petitioner's trial on the terroristic

threats and witness tampering charges, his defense attorney advanced the theory that Ms.

Schildgen was not a credible witness, and she had motive to lie about her confrontation with

Ueland at Sully's Bar to conceal her own violation of a probation condition prohibiting her from

using drugs or alcohol.  In his opening statement at trial, Ueland's attorney stated:

> Now, to the question, "Why did she lie about him like this?"
> She's already got her deal, right?  One of the things you are going
> to hear about it is that she was really happy that day.  Why was she
> happy?  Because she didn't go to jail that day.  She thought she
> was going to be taken into custody and going to prison that day,
> but she was allowed some time to turn herself in.
>
> Still . . ., why would she lie about this?  I'll tell you why,
> because she thought she was on her way back to jail.  When this
> happened, she was on probation.  You are going [to] hear that she
> was on probation for a felony drug case.  You are also going to
> hear that she had a no use condition.  So she gives testimony,
> leaves the courthouse, hops on a bus, not to go home, to go have a
> drink, to celebrate the fact that she wasn't going to go to jail that
> day.
>
> If she thought for a minute that my client was going to turn her
> in to her probation officer for using, wouldn't she take the first

3

swing?  Wouldn't she do what she could to protect herself?  Does
she call the police?  No, she doesn't call the police.  There is a
police station just a few blocks from where this happened.  Does
she run in to the police station in fear of her life?  No.  She goes
home.  She hops on the bus and goes home and makes a phone
call, not to the police.  She makes a phone call to somebody else
before she makes a phone call to her lawyer.

Over the course of years, she has lied and lied and manipulated
and manipulated the system, and she's been in and out of jails and
prisons her whole-for the past ten years.  She did not want to go
back to prison that day or back to jail.

State v. Ueland, 2008 WL 1795589 at *3 (Minn. Ct. App. 2008)(unpublished opinion). Contrary

to counsel's opening statement representations regarding anticipated credibility evidence, the

testimony presented at trial was that Ms. Schildgen was not on probation and was not subject to a

"no use" condition at the time of the incident at Sully's Bar.  No evidence was presented to

support the witness motive theory put forth in the opening statement, and the petitioner now

alleges that the evidentiary representations made by his attorney was ineffective assistance of

counsel.

**Prosecutor's Closing Statement.**  At the end of petitioner's trial, in rebuttal

closing argument, the prosecutor stated:

This is a defendant that controls women.  He is the one that
calls the shots.  He is the one that breaks into the cars and only
steals female IDs, so he can send the women that he controls into
stores to rip people off.  Are you going to tell me that he was that
intimidated by seeing one of these women that he controls through
heroin and through stolen credit cards that he's going to leave the
bar when they were up there to relax and have a beer?  His history
doesn't dictate that, that he's the one that is going to back down.

Why does he leave?  Maybe she's going to go call the cops,
because her life just got threaten [sic] in front of that bar.  He
didn't even sit back down.  Watch that video.  He couldn't get out
of there quick enough.  And it's not part of his character from what

4

we have heard.  He's the controller.

State v. Ueland at *4.  Defense counsel's objection to the prosecution references to the

defendant's character was sustained by the trial court.  The court ordered that the statements be

stricken from the record and the jury was promptly instructed that the defendant's character was

not in evidence.  Ultimately, the jury acquitted petitioner on the two witness tampering charges,

but convicted him on the terroristic threats charge.  Petitioner now asserts that the prosecutor's

closing statement comment as to the defendant's character was prosecutorial misconduct

resulting in his not receiving a fair trial.

**Procedural Status.**  Petitioner appealed his conviction to the Minnesota Court of

Appeals, asserting the same ineffective assistance of counsel and prosecutorial misconduct

claims that are now alleged in this § 2254 habeas corpus action.  The conviction was affirmed by

decision dated April 22, 2008, State v. Ueland, 2008 WL 1795589, and the Minnesota Supreme

Court denied Ueland's Petition for Review of the Decision of the Court of Appeals[3] by Order

dated June 18, 2008.[4]  The present petition for writ of habeas corpus pursuant to 28 U.S.C.§ 2254

was filed in United States District Court on September 4, 2008.  There is no contention that

petitioner did not exhaust his state court remedies with respect to federal claims that are now

before the court, and the claims are therefore reviewed on the merits.

**Ineffective Assistance of Counsel**

Petitioner Timothy Ueland alleges that his criminal defense attorney provided

ineffective assistance of counsel as a result of his making a opening statement promise to

---

[3] Attachment to Complaint.

[4] Respondent-State's Memorandum, Appendix 5.

5

produce certain evidence at trial and thereafter failing to present such evidence.  The claim arises

out counsel's inability to produce proffered evidence supporting a challenge to the credibility of

the complaining witness, Kathleen Schildgen.  Specifically, the attorney stated that the witness

was on probation and subject to a no alcohol use condition, though in fact she was not on

probation and was not subject to a court-ordered prohibition against alcohol use.  Defense

counsel had suggested that the witness had motive to lie about the petitioner's threatening

conduct at Sully's Bar as a means of diverting attention from her own (presumed) indiscretion of

simply being at that location.[5]  In this habeas action the petitioner argues, by way of reference to

his state appellate brief, that his defense lawyer's statement was a result of his lack of

investigatory diligence in determining Ms. Schildgen's probationary status prior to trial, and that

the opening statement error related to the essence of the defendant's trial theory and was

therefore significant and highly prejudicial.  The respondent contends that the attorney's opening

statement remarks were merely an effort to advance a trial strategy that didn't pan out, and the

comments were neither significant nor prejudicial, particularly to the degree necessary to

constitute ineffective assistance of counsel,

　　　　　To establish a claim of ineffective assistance of counsel, petitioner must show that

his counsel's performance fell below professional standards and that his defense was prejudiced

by such ineffective performance.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052,

2064 (1984).  In evaluating counsel's performance, the court must be "highly deferential,"

indulging in "a strong presumption that counsel's conduct falls within the wide range of

---

[5]  The record does not contain any evidence or claim that Ms. Schildgen was observed actually drinking alcohol or taking drugs at Sully's Bar or anywhere else at any time pertinent to this case.

6

reasonable professional assistance." Id., 104 S.Ct. at 2065.   Any deficiencies in counsel's

performance must be prejudicial to the defense in order to constitute ineffective assistance under

the Sixth Amendment.  Id. at 2067.  "A criminal defendant alleging prejudice must show

'counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable.'"  Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993)(quoting Strickland, 104 S.Ct. at

2064).  Establishing prejudice "requires proof 'that there is a reasonable probability that, but for

a counsel's unprofessional errors, the result of the proceeding would have been different.'"

Lawrence v. Armontrout, 31 F.3d 662, 666 (8th Cir. 1994)(quoting Strickland, 104 S.Ct. at

2068).  A petitioner's inability to satisfy both the performance and prejudice prongs is fatal to an

ineffectiveness of counsel claim.  Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997)(citing

Strickland, 104 S.Ct. at 2069).  Consequently, where an ineffectiveness of counsel claim can be

efficiently addressed and dispelled on lack of prejudice grounds, that is the proper course for the

court to follow.  Strickland, 104 S.Ct. at 2069.

        In its review of the ineffectiveness of counsel claim, the Minnesota Court of

Appeals determined that defense counsel's opening comments regarding anticipated factual

evidence of a witness' motive to lie, though arguably incorrect, were made in the context of a

much broader and wholly reasonable defense theory that the witness was not credible and had

reason to lie because of her own plea and sentencing agreement.  The court of appeals further

determined that even if counsel did err in trial strategy or preparation, such error was not

sufficiently prejudicial to constitute a Sixth Amendment violation.  State v. Ueland, 2008 WL

1795589 at *3-4.

        In the present case the record establishes that defense counsel made an opening

statement in which he indicated that he would  produce specific evidence relating to Ms. Schildgen's conditions of probation.  Not only was the evidence not produced, but contrary evidence was presented at trial.  Moreover, the correct facts about Schildgen's non-probationary status, and any related no drug or alcohol use conditions, would have been readily ascertainable by counsel prior to trial.  However, it is not "[t]he object of an ineffectiveness claim [ ] to grade counsel's performance," particularly where the severity and impact of such performance is more easily measured in the context of prejudice.  Strickland, 104 S.Ct. at 2069.

It is petitioner's contention that his attorney's entire defense theory was based on the fact that Schildgen's probationary status gave her reason to lie, and further, the error had a particularly dramatic adverse effect from which counsel was unable to recover.  Defendant has not provided proof of any reasonable probability that the result of his trial would have been different but for the attorney's opening statement errors.  Lawrence v. Armontrout, 31 F.3d at 666.  Advancement of  a core defense theory that the witness did not truthfully report the incident at Sully's Bar was not an unreasonable trial strategy, and with respect to the particular evidence at issue, the court is not persuaded that either the actual existence of the proffered motive/credibility evidence, or defense counsel's avoidance of the issue, would have had significant impact on the ultimate jury decision.  Petitioner greatly overstates the seriousness of counsel's opening statement error and its impact on the jury's verdict in the case, offering mere hyperbole and asserting nothing in the way of evidence, apart from the statements themselves, to support a claim that the result of the trial was unreliable.  Petitioner claim for relief based upon ineffectiveness of trial counsel should be denied.

**Prosecutorial Misconduct in Final Argument**

The petition in this case alleges that petitioner was denied his constitutional right to a fair and impartial trial as a result of the prosecutor's attack on his character, and he is therefore entitled to a new trial.  At trial the prosecutor made statements such that the petitioner "controls women" and that it's not in his character to "back down" to women.  The respondent does not concede in this habeas action that the prosecutor's comments were improper, but the trial court sustained the defendant's objection to the closing, ordered that the offending statement be stricken, and instructed the jury that defendant's character was in evidence in the case.  The Minnesota Court of Appeals determined that the prosecutor's statement improperly injected the defendant's character into the trial.  State v. Ueland, 2008 WL 1795589 at *5.  In any event, the respondent now contends that any arguably improper statements by the prosecutor did not prejudicially affect the defendant's rights or deprive him of a fair trial.

A determination that reversible a prosecutorial misconduct has occurred requires findings that (1) the prosecutor's statements or actions were indeed improper, and (2) the remarks prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.  United States v. Jackson, 41 F.3d 1231, 1233 (8th Cir. 1994)(citing United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985)).  The court can assume, for purposes of analysis, that the prosecutor's comments were improper and thus turn immediately to the issue of their prejudicial effect.  See Jackson at 1233.  In considering prejudicial effect the court examines "whether the conduct, when reviewed in the context of the whole trial, was so offensive as to deprive the defendant of a fair trial."  Id. (citing Hernandez at 460).  The three factors that are typically considered are (1) the cumulative effect of the misconduct; (2) the strength of properly admitted evidence of guilt; and (3) the curative actions taken by the trial court.  Jackson at 1233.

9

The petitioner argued to the Minnesota Court of Appeals (as well as to this court by reference to the same appellate brief), that the prosecutor's comments violated his due process right to a fair trial because the recitation was clear misconduct and was not harmless beyond a reasonable doubt under circumstances in which the remarks were inflammatory, the petitioner's defense had already been compromised by his own lawyer's errors, the state's evidence was not strong, the offending closing statements were the last words heard by the jury, and the court's attempts to cure the misconduct were not sufficient or effective.  As previously noted, the court of appeals found that the prosecutor had engaged in an impermissible character attack, but the appellate court went on to conclude that any potential prejudice resulting from the attack was properly limited by the district court's instruction to the jury.  In addition, the court of appeals found that the jury's split verdict, acquitting the petitioner on two of the three charges, was a strong indication that the jury was not unduly inflamed by the prosecutor's closing argument.

In the case now before the court the cumulative effect of the prosecutorial misconduct was minimal.  The offending comments were made in closing rebuttal, they were quite limited in scope and duration, the remarks were not particularly harsh, and the prosecutor did not persist in making character assertions following the defendant's objection.  While it is difficult for the court to measure to strength of the evidence of guilt based upon either the record or the argument in this habeas case, there was a victim witness who provided direct evidence of defendant's conduct.  Under these circumstances it is apparent that the prosecution was able to overcome whatever credibility problems may have existed with respect to the principal witness, and the court finds no compelling reason to characterize the state's evidence as weak.  Finally,

10

defense counsel promptly objected to the character argument, the trial court sustained the objection, and the court took immediate remedial action by ordering the remarks stricken and advising the jury that the defendant's character was not in evidence in the case.  Moreover, this court agrees with the Minnesota Court of Appeals view that the split verdict resulting from the petitioner's acquittal on two of three charges strongly suggests that the jury was not unduly inflamed by the prosecutor's comments on Ueland's character.  Petitioner was not denied his right to a fair trial as a result of the prosecutor's final argument.

## RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Timothy K. Ueland's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 1] be **dismissed with prejudice**.

Dated:   February 5, 2009

 s/Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before February 18, 2009.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.